AB:RJN

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

M-09-1202

- - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

- against -

NICHOLAS BERNARDO,

        Defendant.

- - - - - - - - - - - - - - - - -X

AFFIDAVIT IN SUPPORT
OF ARREST WARRANT

(18 U.S.C. §§ 1951(a) and 3551)

EASTERN DISTRICT OF NEW YORK, SS:

        THOMAS KENNEDY, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, duly appointed according to law and acting as such.

        Upon information and belief, on or about November 11, 2009, within the Eastern District of New York, the defendant NICHOLAS BERNARDO, together with others, did knowingly and intentionally attempt and conspire to obstruct, delay and affect commerce and the movement of articles and commodities in commerce, by the attempted robbery of John Doe, the owner of an electronics store located in Brooklyn, New York.

        (Title 18, United States Code, Sections 1951(a) and 3551 et seq.)

2

The source of your deponent's information and the grounds for his belief are as follows:[1]

1. I am a Special Agent with the Federal Bureau of Investigation, where I have served since 2002. I am currently assigned to the Organized Crime division. Prior to becoming a Special Agent with the FBI, I served as a Special Agent with the Drug Enforcement Administration for over three years. I have experience investigating matters involving armed robbery, attempted robbery, and other violent crimes, racketeering activities, money laundering and other illegal activities. I have participated in the investigation of this matter, and I am familiar with the information contained in this affidavit based on my own personal participation in the investigation, my review of documents, conversations I have had with other law enforcement officers and others about this matter, and my own training and experience.

2. As set forth below, there is probable cause to believe that the defendant, NICHOLAS BERNARDO participated in the armed robbery of John Doe, an owner of an electronics store, as John Doe drove home from that electronics store on or about November 11, 2009, on 80th Street in Brooklyn, New York. As described below, the defendant, NICHOLAS BERNARDO, together with

---

[1] Because the purpose of this Affidavit is to state only probable cause to arrest, I have not described all the relevant facts and circumstances of which I am aware.

3

others, attempted to force John Doe into the back of John Doe's car. Unable to do so, NICHOLAS BERNARDO, together with others, followed John Doe to the front of his home and fired shots at John Doe and Jane Doe, the wife of John Doe. Subsequently, the defendant NICHOLAS BERNARDO left the crime scene in a red van.

3.   On or about November 11, 2009, around 6:55 in the evening, the New York Police Department ("NYPD") received several 911 calls reporting that gun shots had been fired in the vicinity of John Doe's home on 80th Street in Brooklyn, New York. NYPD officers responded to the location, where they interviewed John Doe, his wife Jane Doe, and other civilian witnesses.

4.   John Doe is the owner of a major electronics and appliance retail store located in Brooklyn, New York. John Doe advised that on November 11, 2009, shortly after he telephoned his wife on his way home from work to ask her to disable their house alarm, he was prevented from driving down his block when a green van parked in front of his car and another van parked in the rear of his car. John Doe further stated, in sum and substance, that: two men approached the front of his car; one of these individuals used a blunt instrument to break the front passenger side window of his car and disengage the locks on his car doors; the individuals then entered his car and tried to force him into the passenger seat and then into the back of his car; the two individuals repeatedly instructed him to get into

4

the back of his car; the two individuals attempted to physically force him into the back of his car, but he struggled with them; the two individuals told John Doe that they had guns and would kill him; John Doe managed to drive to the front of his house, exit his car and run towards his wife, who had come outside; after he got out of his car, one of the individuals fired a gun at him and his wife, but they were not hit.

      5.    The victim John Doe further advised that he does not keep a substantial amount of money in his home because he was the victim of a home invasion in the past. Therefore, he keeps some of the proceeds of his electronics business at his store.

      6.    Jane Doe, the wife of John Doe, advised, in sum and substance, that on or about November 11, 2009, her husband, John Doe, called her at their home shortly before 6:45 in the evening as he returned home from work to ask her to disable their house alarm; she came outside shortly after receiving the phone call to help him with his dry cleaning; as she walked into their front yard, she saw what appeared to be a car accident involving her husband's car and two vans on their block; as she stood in their yard, her husband drove down the street to their house and exited his car; two individuals ran up to their house holding guns; one of these individuals fired shots at her and her husband, but they were not hit.

      7.    Law enforcement officials also interviewed

5

witnesses to the attempted robbery. On or about November 11, 2009, law enforcement officials interviewed Civilian Witness 1, who was driving on 80th Street in Brooklyn around 6:45 in the evening. Civilian Witness 1 stated, in sum and substance, that: he saw a red van driving behind a car, and what appeared to him to be a green van in front of the car; the red van stopped in front of Civilian Witness 1, preventing Civilian Witness 1 from driving any further down the block; two individuals got out of the red van; one of the individuals broke the front passenger side window of the car that was between the two vans; the men struggled inside the car; the driver of the car managed to drive down the block and got out in front of a house; the two individuals ran down the street holding guns; and gun shots were fired.

8. Video footage obtained from the security systems of some of the homes located on 80th Street in Brooklyn, New York shows two vans on 80th Street on the block of John Doe's home around 6:45 pm on November 11, 2009.

9. On or about November 11, 2009, law enforcement officials recovered a red van matching the description provided by the witnesses. The middle passenger seats were missing from the interior of the van. Law enforcement officials determined that the van was rented from All Car Rental Company. After reviewing the Rental Agreement, law enforcement officials

interviewed the individual whose name appeared on the rental agreement (the "Confidential Source"). The Confidential Source[2] stated, in sum and substance, that: the defendant, NICHOLAS BERNARDO requested that Confidential Source rent a car for him and two coconspirators (Coconspirator 1 and Coconspirator 2); pursuant to this request, on or about November 9, 2009, the Confidential Source rented the van from All Car and gave it to NICHOLAS BERNARDO; on November 11, 2009 around 7:00 in the evening, the Confidential Source received a call from the defendant NICHOLAS BERNARDO in which the defendant NICHOLAS BERNARDO told the Confidential Source that the "job went bad" and asked the Confidential Source to meet at the Showplace Bowling Alley in Staten Island New York; the Confidential Source met the defendant NICHOLAS BERNARDO, along with Coconspirators 1 and 2 later that evening in the parking lot of the Showplace Bowling Alley; Coconspirator 1, the Confidential Source and the defendant NICHOLAS BERNARDO entered the bowling alley; the defendant NICHOLAS BERNARDO told the Confidential Source that he and his coconspirators had done a robbery and that they had to "ditch" the van; the defendant NICHOLAS BERNARDO told the Confidential Source that one of his coconspirators believed John Doe to have a lot of cash; during the meeting and in a subsequent meeting later

---

[2]   The Confidential Source does not have a criminal history. He is cooperating with the government in the hopes of receiving lenient treatment for his role in the robbery attempt.

7

that night, the defendant, NICHOLAS BERNARDO, Coconspirators 1 and 2 and the Confidential Source discussed what to do about the van and it was decided that the Confidential Source would report the van stolen; and after this meeting, the Confidential Source attempted to report the van stolen, but the police refused to make a report because the Confidential Source did not have the license plate number for the van.

10. The Confidential Source provided the telephone number for the defendant NICHOLAS BERNARDO to law enforcement officials. Telephone records confirm that the Confidential Source received a telephone call from the phone number the Confidential Source identified as the defendant's telephone number shortly after the attempted robbery occurred.

11. Video surveillance from the Showplace Bowling Alley confirms that the Confidential Source, the defendant NICHOLAS BERNARDO and Coconspirator 1 entered the Showplace Bowling Alley on the night of November 11, 2009.

12. Police records confirm that the Confidential Source attempted to report the van stolen, but that no formal report was made because the Confidential Source was unable to provide the license plate number of the van.

13. The victim John Doe advised, in sum and substance, that his wife's (Jane Doe's) relative lives in the same multi-family house with a relative of Coconspirator 1. John Doe

further advised that on one occasion, he had appliances from his store delivered to his wife's relative house. Subsequently, Coconspirator 1's father called John Doe's wife, Jane Doe, to complain about the electronics.

14. The Confidential Source also advised, in sum and substance, that: on prior occasions, he rented vans for the defendant NICHOLAS BERNARDO, Coconspirator 1 and Coconspirator 2; on at least one prior occasion, the defendant NICHOLAS BERNARDO told the Confidential Source that he need the van to do a "job," which the Confidential Source understood to mean that the defendant was using the van to conduct illegal activity; on one of these occasions, the Confidential Source rented a blue van for the defendant NICHOLAS BERNARDO; on this occasion, the defendant NICHOLAS BERNARDO told the Confidential Source, "we're gonna get this guy," which the Confidential Source understood to mean that the defendant and his coconspirators were either going to rob or "rough up" another individual.

15. Documents obtained from All Car Rental Company confirm that the Confidential Source rented from All Car Rental Company on at least two prior occasions. In or about October 2009, the Confidential Source rented a blue Toyota Sienna, which was the subject of another robbery investigation by the NYPD involving Coconspirator 2.

16. The victim of that robbery, John Doe 2, identified Coconspirator 2 as one of three individuals who robbed and assaulted him. John Doe 2 advised, in sum and substance, that: he was a drug dealer; as he was driving to his home in Staten Island, his car was blocked by a blue van; he was forced out of his car and into the van, from which the middle seats had been removed; inside the van, Coconspirator 2 and the other coconspirators assaulted John Doe 2 and demanded to know where John Doe 2 kept his money; when John Doe 2 stated that his money was in his home, the coconspirators drove John Doe 2 to John Doe 2's house where they took the money he kept in his house.

17. After the robbery of John Doe 2, law enforcement officials investigated the crime scene outside his home and found a Toyota hood ornament. Subsequently, law enforcement officials investigated the All Rental Car Company car lot and found a blue Toyota Sienna which was missing its hood ornament.

18. Based on my training and experience, and the facts related above, the fact that the defendant, NICHOLAS BERNARDO, told the Confidential Source that Coconspirator 1 believed John Doe to have a lot of cash and the fact that John Doe had arranged the delivery of electronics from his store to the house where Coconspirator 1's relative lived, indicate that the defendant and his coconspirators were planning to rob the proceeds of John

Doe's business. Based on my training and experience, the fact that the defendant and his coconspirators attempted to force John Doe into the back of his car indicate that they were planning to transport John Doe to another location. In light of the prior robbery investigation involving Coconspirator 2 in which the victim was forced to the location where he stored his cash and the missing seats inside the red van, it is my belief that the defendant and his coconspirators intended to transport John Doe to his electronics store, where he keeps the proceeds of his business, rather than to his home.

19. On or about November 14, 2009, law enforcement officials showed a photo array to Jane Doe, wife of John Doe, who identified the defendant NICHOLAS BERNARDO as the individual who fired a gun at her and her husband.

20. On or about November 20, 2009, based on cell site information obtained from the telephone used by the defendant NICHOLAS BERNARDO, NYPD officers located the defendant at a hotel in New Jersey and placed him under arrest. In the parking lot of the hotel, law enforcement officials found a car registered to the mother of NICHOLAS BERNARDO. The car and its trunk were searched pursuant to an inventory search. Inside the car, law enforcement officials found a bag containing three handguns, including a Glock .40 caliber handgun, police scanners, zip ties, masks and gloves among other items. NICHOLAS BERNARDO was

carrying a cell phone with the phone number provided by the Confidential Source. A ballistics analysis of the shell casings left outside John Doe's house confirms that they came from the Glock .40 caliber handgun found in the defendant's car.

WHEREFORE, your deponent respectfully requests that a warrant be issued for the arrest of the defendant NICHOLAS BERNARDO so that he may be dealt with according to law.

THOMAS KENNEDY
Special Agent
Federal Bureau of Investigation

Sworn to before me this
7th day of December, 2009

s/Orenstein
THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK